STATE v. JAMES WILSON SHARPE.

(Filed 19 September, 1951.)

**1. Bastards § 6—**

Evidence that defendant acknowledged paternity of prosecutrix' child by paying an obstetrician before the child's birth, and by paying the hospital bill incidental to the child's birth, and by furnishing prosecutrix money for baby clothes, etc.; is sufficient to be submitted to the jury on the issue of paternity.

**2. Same—**

    Evidence tending to show that defendant furnished certain sums to pay the hospital bill incident to the birth of prosecutrix' child and gave prosecutrix money for clothes for the child, without evidence that the amount furnished was inadequate as of that time, and that upon her later statement that she would have to have more money, promised to provide more, *is held* insufficient to support the issue of defendant's willful failure and refusal to support the child, evidence of prosecutrix' demand and defendant's refusal to provide support after the issuance of the warrant being incompetent upon the issue.

**3. Bastards § 1—**

    In a prosecution under G.S. 49-1, 49-2, the State must not only show that defendant is the father of the child and has neglected and refused to support it, but also that such refusal is willful, *i.e.*, intentional and without just cause, excuse or justification, and this element of the offense cannot be supported by evidence of willful failure supervening between the time the charge was laid and the time of trial.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Patton, Special Judge,* at Special April 1951 "A" Term of BUNCOMBE.

Criminal prosecution upon a warrant issued 22 September, 1950, out of the Domestic Relations Court of Buncombe County, North Carolina, charging that defendant James Wilson Sharpe "did wilfully and unlawfully neglect and fail to provide adequate means of support" for his minor child . . . born July 11, 1950,—an illegitimate child begotten on the body "of a certain named woman to whom he had never been married," etc., heard in Superior Court of said county on appeal thereto by defendant from judgment on finding adverse to him by the Judge of Domestic Relations Court both as to issue of paternity, and as to guilt on the charge set forth in the warrant.

Upon trial in Superior Court; the State offered the testimony of the prosecutrix and several other witnesses which tends to show this state of facts: Defendant, a married man, is the father of a girl child begotten by him upon the body of the unmarried seventeen year old prosecutrix, a scholastic ninth grader, and born 11 July, 1950. When prosecutrix became pregnant in October, 1949, defendant and his sister took her to see a doctor, an obstetrician, for examination. Defendant, upon being informed that the doctor advised that prosecutrix was pregnant, gave to her $50.00 to pay the doctor, and told her he wanted her to go to a hospital where she would be taken care of in the delivery of the child, and to have a private room. Pursuant thereto she made arrangements to go to a certain hospital, and did go there for the delivery of the child. Defendant gave to prosecutrix $25.00 "to get baby clothes." When the child was

born, a sister-in-law of prosecutrix so informed defendant by phone, and told him that the mother of prosecutrix "had to have some money to pay the hospital bill and he promised that he would bring it" the next day. He did come then, and asked her to get in his car and go with him to the hospital. She did so, and he gave to her $80.00 to pay the bill, and $5.00 to give to the prosecutrix, all of which she did. The hospital bill amounted to $75.80, and the sum of $4.20 of the $80.00 was refunded to prosecutrix. Prosecutrix stayed in the hospital five days after the birth of the child, and then in bed at home about two weeks. Defendant did not come to see the baby at the hospital but did do so at the home of prosecutrix. To the question, asked her on cross-examination, "Then, after you got up it was about two months before Wilson Sharpe came by?", she answered "Yes."

On direct examination she was asked these questions, to which she answered as shown:

"Q. State what, if anything, you told him in regard to the support of the baby.

"A. He stopped in front of my house and blowed and I went down there, and I had taken the baby to the doctor and she was two months old. I took her for a check-up and he asked where I had been and I told him that I had took the baby to the doctor for a check-up. I told him that I would have to have some money, that my mother paid the doctor, and he told me that he would be back and give me some money and he asked to see the baby and I asked him to go up to the house to see it and he said 'No' for me to go up and get it, so I went and . . . brought her to the car and he looked at her and he asked me to give him the baby, and I said 'I wouldn't give it to you or anybody else.'

"Q. What contributions has he made for the support of the baby after you made the demand?

"A. Not any.

"Q. Who has been supporting the child?

"A. My mother and daddy. It is a breast baby, but she eats baby food and drinks milk. Mother buys a gallon of milk at a time for her. We get about nine jars of baby food every week."

Prosecutrix, refreshing her recollection by the warrant, testified, and the record shows that the warrant against defendant was signed on 22 September, 1950. She was asked to "State whether or not this defendant saw you after you swore this warrant out for him in the Domestic Relations Court," to which she answered, "Yes, he come out to my house one night and called me down to the steps and he asked me to come up here and release the warrant and if I did he would give me $20.00 a week . . . I told him I couldn't do that."

Defendant moved for judgment as of nonsuit at the close of the State's evidence. The motion was denied, and he excepted. Then defendant rested and renewed motion for judgment as of nonsuit. The motion was denied, and he excepted.

The case was submitted to the jury upon two issues, the first, as to paternity, and the second, as to the guilt of defendant on the charge of willful neglect or refusal to support and maintain his named illegitimate child. The jury answered each issue in the affirmative, and rendered verdict: Guilty as charged in the warrant.

Judgment: Confinement in the common jail of Buncombe County for a term of six (6) months, to be assigned to work on the roads under the supervision of the State Highway and Public Works Commission—the prison sentence being suspended upon stated conditions, until the named child reached the age of fourteen years.

Defendant appeals therefrom to Supreme Court, and assigns error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Charles G. Powell, Jr., Member of the Staff, for the State.*

*Sanford W. Brown and William V. Burrow for defendant, appellant.*

WINBORNE, J. While the evidence offered by the State, as shown in the record of case on appeal in the present prosecution, is sufficient to support the finding of the jury on the issue as to paternity submitted by the court, we are of opinion, and hold that the evidence is insufficient to support the criminal charge preferred against defendant.

The charge against defendant is predicated upon the statute referred to as "An Act Concerning the Support of Children of Parents Not Married to Each Other," G.S. 49-1, which provides that "Any parent who willfully neglects or who refuses to support and maintain his or her illegitimate child shall be guilty of a misdemeanor and subject to such penalties as are hereinafter provided," and that "A child within the meaning of this Article shall be any person less than fourteen years of age and any person whom either parent might be required under the laws of North Carolina to support and maintain as if such child were the legitimate child of such parent." G.S. 49-2.

In order to convict a defendant under this statute, G.S. 49-2, it is held by this Court that the burden is on the State to show not only that he is the father of the child, and that he has neglected or refused to support and maintain it, but further that his neglect or refusal is willful, that is, intentionally done "without just cause, excuse or justification" after notice and request for support. *S. v. Hayden,* 224 N.C. 779, 32 S.E. 2d 333, and cases cited. See also *S. v. Stiles,* 228 N.C. 137, 44 S.E. 2d 728; *S. v. Ellison,* 230 N.C. 59, 52 S.E. 2d 9.

"The charge," as stated in *S. v. Summerlin,* 224 N.C. 178, 29 S.E. 2d 462, opinion by *Seawell, J.,* "must be supported by the facts as they existed at the time it was formally laid in the court, and cannot be supported by evidence of willful failure supervening between the time the charge was made and the time of trial,—at least when the trial is had . . . upon the original warrant." See also *S. v. Thompson,* 233 N.C. 345, 64 S.E. 2d 157.

In the light of the statute, and these decisions of this Court, applied to the evidence offered by the State, it is manifest that at the time the charge was laid, and the warrant sworn out, 22 September, 1950, the evidence fails to show a willful neglect or refusal by defendant to support the child. Indeed, the evidence fails to show that at the time the prosecution was begun the amount contributed by defendant had been insufficient to support and maintain the child. He had not only contributed $25.00 for clothes for the child, but had given to prosecutrix $5.00, and she had received $4.20, the surplus of amount paid to hospital by defendant, a total of $34.20. And there is no evidence that this amount was insufficient to support and maintain the child up to that time. Thus it may be fairly contended by defendant the evidence fails to show, or to support a finding, that at the time the warrant was sworn out, he had neglected or refused to support or maintain his said child.

Thus we hold that the motion of defendant for judgment as of nonsuit is well taken, and should have been granted. This holding is without prejudice to any subsequent events in respect to conduct of defendant in his duty under the law to support his said child.

Reversed.

VALENTINE, J., took no part in the consideration or decision of this case.